UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

AILEEN ORMSBY *et al.*,

    Plaintiffs,

v.

NEXUS RVS, LLC *et al.*,

    Defendants.

CAUSE NO. 3:19-CV-626 DRL

OPINION AND ORDER

On March 16, 2023, the court granted David Lint and Nexus RVs, LLC's (together "Nexus") motion for summary judgment on all claims brought by Aileen Ormsby, George Ormsby, and Two J's Enterprises LLC. The court's summary judgment ruling provides the background for this case, *see Ormsby v. Nexus RVs, LLC*, 2023 U.S. Dist. LEXIS 44338 (N.D. Ind. Mar. 16, 2023). In short, the plaintiffs brought Arizona claims of implied warranty, express warranty, breach of contract, fraud under the Arizona Consumer Fraud Act (ACFA), and common law fraud, all based on the sale of a 2017 Nexus Bentley. Central to the resolution of the warranty and contract claims was that the plaintiffs never had a contract or other enforceable promise with Nexus. On the fraud claims, the purchaser, Two J's, never heard any misrepresentations from Nexus to induce the purchase, and the Ormsbys suffered no injury because they weren't purchasers.

On March 30, 2023, Nexus filed a bill of costs [111] and a motion for attorney fees [112]. On May 30, 2023, the court denied the plaintiffs' motion to stay briefing and ruling on costs and fees pending appeal [121]. On June 21, 2023, the plaintiffs filed their response, contesting the request for attorney fees but not opposing the request for costs [127 at 1 n.1]. Thus, only the issue of attorney fees remains. The Seventh Circuit has since affirmed the summary judgment ruling.

Nexus seeks $89,879.21 in fees under Arizona law. "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Ariz. Rev. Stat. § 12-341.01(A). "If a written settlement offer is rejected and the judgment finally obtained is equal to or more favorable to the offeror than an offer made in writing to settle any contested action arising out of a contract, the offeror is deemed to be the successful party from the date of the offer and the court may award the successful party reasonable attorney fees." Ariz. Rev. Stat. § 12-341.01(A). The award of reasonable attorney fees "should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense. It need not equal or relate to the attorney fees actually paid or contracted, but the award may not exceed the amount paid or agreed to be paid." Ariz. Rev. Stat. § 12-341.01(B).

The plaintiffs first argue that Ariz. Rev. Stat. § 12-341.01 is procedural such that federal law applies to the issue of attorney fees and precludes an award. *See Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1251 (7th Cir. 2022) ("A federal court sitting in diversity applies state substantive law and federal procedural law."); *see also Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683-84 (1983) (citation omitted) ("Our basic point of reference is the 'American Rule,' under which even 'the *prevailing* litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the *loser*.'"). Rule 54 allows a recovery of attorney fees through the applicable statutory authority. Fed. R. Civ. P. 54(d)(2)(B)(ii); *see also Minn. Power & Light Co. v. Hockett*, 14 F. Appx. 703, 709 (7th Cir. 2001) ("the availability of attorneys' fees to prevailing parties in diversity litigation is governed by state law," barring some conflict with federal law). The court will assess the request for attorney fees through state law, particularly § 12-341.01.

The plaintiffs argue that there can be no award of attorney fees under this Arizona statute because the claims did not arise from a valid contract. They argue that because the court found no privity and thus no valid contract among the parties, it would be "bitter irony" for the court to award attorney fees to Nexus. This argument fails under logic and Arizona law. "By allowing attorney[] fees only where there

2

is a breach of a valid contract and not where the dispute concerns the validity of the contract, the result would be both inequitable and unjust." *Marcus v. Fox*, 723 P.2d 682, 685 (Ariz. 1986). The action arose out of contract even when the plaintiffs failed to prove a contract. Section 12-341.01 applies to all contract claims, not just those claims that end with an enforceable contract. *See id.*

The plaintiffs next argue that there should be no recovery of attorney fees for the two fraud claims because those claims do not arise out of a contract.[1] "Generally, the words 'arising out of a contract' describe an action in which a contract was the main factor causing the dispute." *Keystone Floor & More, LLC v. Ariz. Reg. of Contractors*, 219 P.3d 237, 239 (Ariz. Ct. App. 2009). "It is well-established that a successful party on a contract claim may recover not only attorney[] fees expended on the contract claim, but also fees expended in litigating an 'interwoven' tort claim," provided the party requesting attorney fees prevails on those claims. *Ramsey Air Meds, L.LC. v. Cutter Aviation, Inc.*, 6 P.3d 315, 318 (Ariz. Ct. App. 2000). "Claims are interwoven when they are based on the same set of facts and involve common allegations, which require the same factual and legal development." *Skydive Ariz., Inc. v. Hogue*, 360 P.3d 153, 165 (Ariz. Ct. App. 2015).

"The fact that the two legal theories are intertwined does not preclude recovery of attorney[] fees under § 12-341.01(A) as long as the cause of action in tort could not exist *but for* the breach of the contract." *Sparks v. Rep. Nat'l Life Ins. Co.*, 647 P.2d 1127, 1141 (Ariz. 1982). A "tort claim will 'arise out of a contract' only when the tort could not exist 'but for' the breach or avoidance of contract." *Ramsey*, 6 P.3d at 320. "The test is whether the defendant would have a duty of care under the circumstances even in the absence of a contract." *Id.* at 321.

A claim of fraudulent inducement into a contract is generally not a claim that arises out of a contract. *Morris v. Achen Constr. Co.*, 747 P.2d 1211, 1212-13 (Ariz. 1987); *see Nahom v. Blue Cross & Blue*

---

[1] Though unchallenged by the plaintiffs, the court notes that the warranty claims do arise out of a contract. *See Chaurasia v. GMC*, 126 P.3d 165, 174 (Ariz. Ct. App. 2006) ("Time after time, Arizona courts have held that a claim for breach of warranty does arise out of contract for purposes of A.R.S. § 12-341.01(A).").

3

*Shield*, 885 P.2d 1113, 1124 (Ariz. Ct. App. 1994) (same holding for fraudulent inducement claim under Arizona Consumer Fraud Act). That "claims 'would' not have been brought 'but for' the contract claim does not satisfy the *Ramsey Air Meds* standard which allowed attorney fees for tort claims that *could* not have been brought but for the breach of contract." *Bennett v. Baxter Grp., Inc.*, 224 P.3d 230, 237 (Ariz. Ct. App. 2010); *see Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 212 P.3d 853, 861 (Ariz. Ct. App. 2009) (analyzing legal overlap between contract and tort claims, noting that the tort claim was "substantially dependent" on the contract claim).

*Pettay v. Insurance Mktg. Servs.*, 752 P.2d 18, 21 (Ariz. Ct. App. 1987), affirmed an award of attorney fees for a case that involved both a tort and a contract action. There, the plaintiffs alleged that the defendants fraudulently induced the plaintiffs to enter a contract by making promises the defendants had no intention of keeping. *Id.* Thus, the court held that the "claim of misrepresentation could not exist but for the alleged breach of contract." *Id.* But *Morris*, 747 P.2d at 1213, decided later that same year by the Arizona Supreme Court, held that "the tort of fraudulently inducing one to enter into a contract can be committed without there also being a breach of the contract itself" because "the tort of fraudulent inducement would necessarily be completed before a breach of the contract could occur." That is true because "[t]he duty not to commit fraud is obviously not created by a contractual relationship and exists . . . even when there is no contractual relationship between the parties at all." *Id.* at 1213.

In *Marcus*, 723 P.2d at 683, the plaintiff brought an action for rescission based on a claim that a contract was fraudulently induced. The fraud claim there arose out of a contract because the "cause of action for tort could not have existed but for the fraudulently induced contract." *Id.* at 685. The claims were thus legally interwoven and did not depend on a later breach. Later Arizona cases have called a tort claim "interwoven" if it depended on the success of the contract claims. *See Skydive*, 360 P.3d at 166; *see also Bennett*, 224 P.3d at 236 (fraud claims do not arise out of a contract even when plaintiff also brings a breach of contract claim if the fraud claim could be brought without the contractual claim).

4

The plaintiffs' fraud claims were premised on fraudulent inducement into a contract for the 2017 Nexus Bentley [*see* 12 at ¶¶ 54-69; 98 at 23-25 (arguing that "[r]elying on Defendants' misrepresentations, Mrs. Ormsby signed the Bill of Sale as an agent of Two J's")]. Generally, such a claim does not arise out of a contract. *See Morris*, 747 P.2d at 1213; *Bennett*, 224 P.3d at 236. Fraudulent inducement is not dependent on a breach of contract. *See Morris*, 747 P.2d at 1213; *Sparks*, 647 P.2d at 1141.

The duty not to commit fraud exists independent of any contractual relationship. *Ramsey*, 6 P.3d at 321. The ACFA declares as an unlawful practice the "act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. § 44-1522(A). Likewise, common law fraud in Arizona requires: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the information should be acted upon by the hearer and in a manner reasonably contemplated, (6) the hearer's ignorance of the information's falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury." *Taeger v. Cath. Fam. & Cmty. Servs.*, 995 P.2d 721, 730 (Ariz. Ct. App. 1999). Thus, Nexus had a duty to refrain from making fraudulent statements to the plaintiffs' detriment without a contractual obligation as a necessary precursor.

Nexus argues that there is significant factual overlap among the five claims. The court's discussion of the fraud claims reiterated many facts from the warranty and contract claims [*see* 109 at 19]. But factual overlap alone is not enough. Though the facts may "show a breach of contract, the breach of which may also constitute a tort," these interwoven facts support attorney fees for the fraud claims "as long as the cause of action in tort could not exist *but for* the breach of the contract." *Sparks*, 647 P.2d at 1141. The alleged fraud would have been complete upon the entering of a fraudulent contract, not a subsequent

5

breach of contract or warranty. *See Morris*, 747 P.2d at 1213. Any fee award for Nexus must be confined to the contract and warranty claims only.

"[F]or the court to make a determination that the hours claimed are justified, the fee application must be in sufficient detail to enable the court to assess the reasonableness of the time incurred." *Schweiger v. China Doll Restaurant*, 673 P.2d 927, 932 (Ariz. Ct. App. 1983). The plaintiffs challenge the invoices submitted by Nexus, as the invoices provide no delineation among the contract, warranty, and fraud claims. Nexus argues that its "defense against the contract claim cannot be extracted from its defense of the AFCA and fraud claims" due to the "factual stew" of the claims. The plaintiffs argue that Nexus should receive no fee award because of the lack of delineation between claims.

Given the factual stew, as the parties put it, a different approach than "all or nothing" is appropriate. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "[E]ven if the claims really are interwoven, . . . when it is impossible to separate time spent on [compensable] and [non-compensable] claims, 'there is nothing to do but make an across-the-board reduction that seems appropriate in light of the ratio between [compensable] and [non-compensable] claims.'" *Sommerfield v. City of Chi.*, 863 F.3d 645, 652 (7th Cir. 2017); *see also Dagy Grp. Inc. v. Xiqing Sun*, 2021 Ariz. Super. LEXIS 784, 4-5 (Ariz. Super. Ct. Feb. 8, 2021) ("In this circumstance, the most reasonable approach is for the Court to apportion fees based on its determination of the relative percentage of the litigation devoted to the [compensable claim].").

Here, the claims rested on largely the same facts—the representations made (or not made) to the plaintiffs by Nexus. Thus, the only significant additional time spent on the fraud claims would have been through legal argument. The fraud arguments took a much smaller portion of Nexus's summary judgment briefing than the contract and warranty arguments [*see* 95 at 15-17; 100 at 13-14]. Given the factual overlap among the claims and the relatively short legal arguments devoted to the fraud claims, the court finds that 90 percent of the fees incurred should be allocated to the contract and warranty claims, with 10

percent allocated to the fraud claims. *See Dagy*, 2021 Ariz. Super. LEXIS at 4-5 (apportioning 50 percent of attorney fees to prevailing claim and noting that allocation is not a "precise science").

Having allocated fees for the contract and warranty claims, the court turns to the law governing the discretion to award contract fees. "[T]here is no presumption that a successful party should be awarded attorney fees under § 12-341.01." *Motzer v. Escalante*, 265 P.3d 1094, 1095 (Ariz. Ct. App. 2011). Six factors guide the court's discretion to award fees: "(1) whether the unsuccessful party's claim or defense was meritorious; (2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result; (3) whether assessing fees against the unsuccessful party would cause an extreme hardship; (4) whether the successful party prevailed with respect to all of the relief sought; (5) whether the legal question presented was novel and whether such claim or defense have previously been adjudicated in this jurisdiction; and (6) whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees." *Wagenseller v. Scottsdale Memorial Hosp.*, 710 P.2d 1025, 1049 (Ariz. 1985).

The first factor weighs in Nexus's favor. All three of the plaintiffs' warranty and contract claims failed. The plaintiffs argue that there was merit to their claims and that the case was "unique," citing the court's summary judgment order. "Unique" isn't synonymous with "meritorious." Though these claims required some nuanced factual analysis, at the end of the road only Two J's was in a contractual relationship at all, and not with Nexus. The Ormsbys never entered a contract with any party. Two J's may have had meritorious claims against the dealer that sold the unit and was a party to the contract (Rowley White) [*see* 109 at 21], but that doesn't mean the company had meritorious claims against Nexus. Indeed, as Nexus argues, it is elemental to the law of contracts that privity must be established and a matter that ought to have been screened out before filing the lawsuit. The court of appeals recently

7

affirmed, and that only underscores this factor in Nexus's favor. *See Ormsby v. Nexus RVs, LLC*, 2023 U.S. App. LEXIS 33698 (7th Cir. Dec. 20, 2023).

The second factor weighs heavily in Nexus's favor, as Nexus could not have avoided the litigation. On July 20, 2021, Nexus offered the plaintiffs a settlement figure of $22,500. The plaintiffs responded with a demand that Nexus pay $340,424.20, pick up the unit, crush the unit, record the crushing on video, send a copy of the video to the plaintiffs, pay $25,000 to a non-profit entity of the plaintiffs' choosing, and deliver to the plaintiffs a written letter of apology signed by Nexus corporate officers—all this for a unit that cost the plaintiffs $174,483. This was a ridiculous settlement demand. And it undoubtedly put a chilling effect on further settlement discussions.

The plaintiffs argue that Nexus could have avoided the litigation because Nexus knew that the unit had problems before the company deceived the Ormsbys into paying $175,000 for it by falsely claiming its previous owner had returned it to get a larger one. But the Ormsbys weren't purchasers, and Two J's heard no deceptions. Regardless of what may have transpired before the purchase, the plaintiffs had no contractual right to litigate against Nexus. Nexus's litigation was not superfluous to resolving the dispute. Nexus tried to avoid the litigation through settlement, but the plaintiffs slammed that door shut in an absurd way. This factor favors Nexus.

The third factor swings in Nexus's favor because the plaintiffs have argued baldly that an award of fees would impose an extreme hardship on them. They haven't demonstrated what that hardship is, arguing only that it is inequitable because Nexus is a "large sophisticated corporation" and the Ormsbys are two retirees. But Two J's, a company, is also a plaintiff. The court won't develop arguments for the plaintiffs. *See Gross v. Town of Cicero*, 619 F.3d 697, 704-05 (7th Cir. 2010). Merely saying there is an extreme hardship and proving one are two different things.

The fourth factor, much like the first, swings decisively in Nexus's favor, as Nexus won on all claims. The plaintiffs call Nexus's victory a "procedural quirk," and not a win on the merits. The only

procedural quirk perhaps was the effort to avoid taxes in detriment to rights the Ormsbys might otherwise have enjoyed. And neither this court, nor would it dare say the court of appeals, views the summary judgment ruling or opinion on appeal of some robust discussion a procedural quirk. The absence of privity is a merits issue under the law, not procedure.

The fifth factor weighs in Nexus's favor as well. There was no novel question of law. The case came down to facts, and the facts, though nuanced, failed under the well-established law of warranty and contracts.

The sixth and final factor weighs in Nexus's favor too. An award here won't discourage other parties with tenable claims or defenses from litigating the claims in this case. The plaintiffs didn't have a tenable claim—they never had a contract with Nexus, based on the singular facts of this case. Those in privity with manufacturers will litigate without impediment from this case. The plaintiffs argue that an award here will discourage tenable warranty claims, and such claims typically don't allow fee-shifting in favor of the manufacturer. But the law regarding fee-shifting in Arizona contract and warranty cases remains. So the lesson "buyer beware" might also include "litigant beware." These six factors counsel an award of attorney fees to Nexus.

Though a fee award is proper here, the court must consider whether the amount of attorney fees requested is reasonable. "[T]he number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate . . . is presumed to be the proper, reasonable fee." *Bogard v. Cannon & Wendt Elec. Co.*, 212 P.3d 17, 30 (Ariz. Ct. App. 2009) (citation and quotations omitted); *see also Hensley*, 461 U.S. at 433 ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). "Once a party establishes its entitlement to fees and meets the minimum requirements in its application and affidavit for fees, the burden shifts to the party opposing the fee award to demonstrate the impropriety or unreasonableness of the requested fees." *Nolan v. Starlight Pines Homeowners Ass'n*, 167 P.3d 1277, 1286

9

(Ariz. Ct. App. 2007). "The determination of what fee award is reasonable is also within the sound discretion of the trial court." *Smith v. Town of Marana*, 524 P.3d 254, 261 (Ariz. Ct. App. 2022).

Seven attorneys and a paralegal worked on the case for Nexus, expending 466.82 actual hours (including 57.8 paralegal hours) on the case from the date of the settlement offer to the plaintiffs on July 21, 2021 to January 23, 2023, before the court's March 16, 2023 summary judgment ruling [113-6 at 7]. Brett E. Inabnit, with 33 years of experience in commercial litigation, charged $350 per hour until January 1, 2023, when he began charging $375 per hour [113-5 at 2]. Nicolas J. Derda, with extensive experience in commercial litigation since his admission to the Indiana bar in 2008, charged $260 per hour until January 1, 2023, when he began charging $275 per hour [*id.*]. Christopher S. Riley, with extensive experience in commercial litigation since his admission to the Indiana bar in 2001, charged $275 per hour until January 1, 2023, when he began charging $300 per hour [*id.*]. Jessica R. Merina, with experience in commercial litigation and brief writing since her admission to the Indiana bar in 2014, charged $225 per hour until January 1, 2023, when she began charging $250 per hour [*id.*]. Steven R. Bell, with experience in brief writing since his admission to the Indiana bar in 2020, charged $160 per hour [*id.*]. Matthew Lawson, with experience in civil litigation since his admission to the Indiana bar in 2014, charged $160 per hour [*id.*]. Michael W. Shakour, with experience in brief writing since his admission to the Indiana bar in 2019, charged $160 per hour [*id.* 3]. Christine M. Ort, a paralegal, charged $110 per hour [*id.*]. Applying the rates of the individual attorneys and the paralegal to the hours expended yielded an invoice of $112,472.70 [113-6 at 7].

Nexus's counsel adjusted the hours to 374.1 (including 48.89 paralegal hours) and billed $89,879.21 [*id.*]. This calculation produces an average effective rate of $240.25 per hour. One of Nexus's attorneys, Mr. Riley, submitted an affidavit noting his experience practicing law in Northern Indiana for over 22 years and his opinion that the rates charged by the firm are reasonable, customary, and in keeping with local practice [113-4 at ¶¶ 5, 7]. He further states that the billed amount reflects the necessary work

for the claims [*id.* ¶ 11]. This presider too is quite familiar with rates in this arena. These hours and rates for experienced attorneys are reasonable on their face, particularly because Nexus won on every claim. *See Smith v. Nexus RVSA, LLC*, 572 F. Supp.3d 550, 561-63 (N.D. Ind. 2021) (similar claims resolved after a four-day jury trial featuring 865.52 hours and a $248,831.64 fee award). The court has some pause about involving seven attorneys to work on a simple warranty case, but much of the work was driven down to a lower rate for arguable efficiency.

The plaintiffs don't contest the hours or rates, but instead argue that the billing invoices submitted by Nexus contain block billing entries and redacted entries, making the entries impermissibly vague. As to the redacted entries, Nexus notes that these entries were not included in the fee calculation, as they predate the settlement offer. As to block billing entries, a review of the invoices shows entries for discrete, identifiable tasks [*see* 113-7]. "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Fafaras v. Citizens Bank & Tr.*, 433 F.3d 558, 569 (7th Cir. 2006). Further, the plaintiffs failed to identify which block-billed entries are vague. "A party challenging the amount of fees requested must provide specific references to the record and specify which amount or items are excessive." *Weinstein v. Weinstein*, 326 P.3d 307, 319-20 (Ariz. Ct. App. 2014). The plaintiffs have not met their burden. An award of fees at the requested amount, with a 10 percent reduction for the fraud claims, is warranted.

## CONCLUSION

Accordingly, the court GRANTS IN PART the motion for attorney fees [112] and ORDERS all plaintiffs to pay Nexus $80,891.29 in attorney fees under Ariz. Rev. Stat. § 12-341.01.

SO ORDERED.

January 24, 2024                                                *s/ Damon R. Leichty*
                                                                                    Judge, United States District Court